**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                             Case No. 6:19-bk-01510-CCJ
                                                   Chapter 7
DANNY L. MONK and PATRICIA L. MONK,

          Debtors.
_____/

**BANK OF AMERICA, N.A.'S**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**
(Re: 14 Cypress Trail, Lakeland, Georgia 31635)
[Property Surrendered in Statement of Intent]

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at 400 W. Washington Street, Suite 5100, Orlando, FL 32801, and serve a copy on the movant's attorney, Jennifer Laufgas, at Aldridge | Pite LLP, Fifteen Piedmont Center, 3575 Piedmont Road, N.E., Suite 500, Atlanta, GA 30305 and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Bank Of America, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtors having an address of 14 Cypress Trail, Lakeland, Georgia 31635 (the "Property"). In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtors on March 11, 2019.

2.      The Debtors have executed and delivered or are otherwise obligated with respect to that certain promissory note in the principal amount of $183,143.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit "A." Movant is an entity entitled to enforce the Note.

3.      Pursuant to that certain Security Deed (the "Security Deed"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Security Deed are secured by the Property. A true and correct copy of the Security Deed is attached hereto as Exhibit "B."

4.      All rights and remedies under the Security Deed have been assigned to the Movant pursuant to that certain assignment of security deed, a true and correct copy of which is attached hereto as Exhibit "C."

5.      The legal description of the Property is:

**ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN LAND LOT 494 OF THE 10TH DISTRICT OF LANIER COUNTY, GEORGIA DEED RECORDS, BEING MORE PARTICULARLY DESCRIBED AS LOT 35 OF BANKS LAKE POINTE SUBDIVISION AS SHOWN ON THAT CERTAIN MAP OR PLAT OF SURVEY ENTITLED "FINAL PLAT OF BANKS LAKE POINTE", DATED SEPTEMBER 29, 2005 AND RECORDED IN PLAT CABINET A, SLIDE NUMBER 133J\* IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF LANIER COUNTY, GEORGIA DEED RECORDS. SAID MAP OR PLAT OF SURVEY IS INCORPORATED EHREIN BY REFERENCE THERETO FOR ALL PURPOSES IN AID OF DESCRIPTION.**

**\*REVISED PLAT SHOULD BE A/131J**

6.      As of the petition date, the outstanding unpaid principal balance under the Note was $155,989.66.

7.    The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtors:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 4 | 12/1/2018 | 3/1/2019 | $1,293.46 | $5,173.84 |
| Less partial payments: | | | | ($ 0.00) |

**Total:    $5,173.84**

8.    In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $931.00 in legal fees and costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.    The estimated market value of the Property is $157,100.00. The basis for such valuation is the Lanier County Property Appraiser. A copy of the Lanier County Property Appraiser is attached hereto as Exhibit "D."

10.    Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $159,376.54.

11.    Cause exists for relief from the automatic stay for the following reasons:

(a) Movant's interest in the Property is not adequately protected. Movant's interest in the collateral is not protected by an adequate equity cushion. The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

(b) Pursuant to 11 U.S.C. §362(d)(2)(A), Debtors have no equity in the Property; and pursuant to 11 U.S.C. §362(d)(2)(B), the Property is not necessary for an effective reorganization.

**WHEREFORE**, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay allowing Movant (and any successors and/or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.      For such other relief as the Court deems proper.


Dated: April 5, 2019                          Respectfully Submitted:

Jennifer Laufgas Bar No.: 56181
Aldridge Pite, LLP
Attorney for Secured Creditor
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: jlaufgas@aldridgepite.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay was served electronically or via U.S. Mail, first-class postage prepaid, to:

**<u>DEBTORS ATTORNEY</u>**
**<u>(via electronic notice)</u>**
Neil J Buchalter
Neil J Buchalter PA
2395 North Courtenay Parkway
Suite 203
Merritt Island, FL 32953
eservice@buclawgroup.com

**<u>DEBTORS</u>**
Danny L. Monk
Patricia L. Monk
1425 Rila Street, SE
Palm Bay, FL 32909


Dated: April 5, 2019

**<u>TRUSTEE</u>**
**<u>(via electronic notice)</u>**
Gene T Chambers
Post Office Box 533987
Orlando, FL 32853
gtchambers@cfl.rr.com

**<u>UNITED STATES TRUSTEE</u>**
**<u>(via electronic notice)</u>**
United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801
USTP.Region21.OR.ECF@usdoj.gov


/s/ *Jennifer Laufgas*
Jennifer Laufgas Bar No.: 56181
Aldridge Pite, LLP
Attorney for Secured Creditor
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: jlaufgas@aldridgepite.com



# NOTE



FHA Case No.

AUGUST 26, 2010                 PROVIDENCE                RHODE ISLAND
[Date]                              [City]                      [State]

### 14 CYPRESS TRAIL, LAKELAND, GEORGIA 31635
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means  SEMPER HOME LOANS, INC., A RHODE ISLAND CORPORATION
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED EIGHTY-THREE THOUSAND ONE HUNDRED FORTY-THREE AND 00/100                                              Dollars (U.S. $ 183,143.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FOUR AND 875/1000                          percent (    4.875 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st  day of each month beginning on  OCTOBER 1, 2010                    . Any principal and interest remaining on the  1st   day of SEPTEMBER, 2040             , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at  225 DUPONT DRIVE, PROVIDENCE, RHODE ISLAND 02907
, or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 969.21                  . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

EXHIBIT A

(Check applicable box.)

[ ] Growing Equity Allonge
[ ] Graduated Payment Allonge
[ ] Other [specify]:

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR AND 000/1000                                        percent (      4.000  %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

DocMagic  800-649-1362
www.docmagic.com

EXHIBIT A

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
DANNY L. MONK                    -Borrower

_____ (Seal)
PATRICIA L. MONK                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF

FRANKLIN AMERICAN MORTGAGE CO.
WITHOUT RECOURSE

SEMPER HOME LOANS, INC., A RHODE ISLAND CORPORATION

_____
KEVIN KNESEK, VICE PRESIDENT
POA, LONE STAR BANK, S.S.B.

                                 PAY TO THE ORDER OF

Pay to the order of              WITHOUT RECOURSE
Bank of America, N.A.            BANK OF AMERICA, N.A.

without recourse                 BY _____
                                 MICHELE BJOLANDER
Franklin American Mortgage Company   SENIOR VICE PRESIDENT

_____
Julie Bishop                     [Sign Original Only]
Senior VP of Operations

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 09/25/00                Page 3 of 3        DocMagic eFlorms 800-649-1362
                                                     www.docmagic.com

EXHIBIT A

GEORGIA INTANGIBLE
RECORDING TAX PAID
$ *550.50*
DATE *9-3-10*
*[signature] Luke DQ*
CLERK OF SUPERIOR COURT

After Recording Return To:

SEMPER HOME LOANS, INC.
225 DUPONT DRIVE
PROVIDENCE, RHODE ISLAND 02907 *Corrective*
Loan Number: ████████

*GEORGIA, Lanier County*
*Clerks Office Superior Court*
*Filed for Record*
*at 6:00 PM 11-8 2010*
*Recorded in Book 223*
*Page 399-410 this 8*
*day of November A.D., 2010*
*[signature] Luke DQ*
*C.S.C.*

*GEORGIA, Lanier County*
*Clerks Office Superior Court*
*Filed for Record*
*at 1:30 PM 9-3 2010*
*Recorded in Book 221*
*Page 466-477 this 3*
*day of Sept A.D., 2010*
*[signature] Luke DQ*
*C.S.C.*

---

[Space Above This Line For Recording Data]

---

corrective
# SECURITY DEED

FHA CASE NO.
████████

   ***the purpose of this corrective deed is to correct the
   FHA case number to contain the last three numbers.***

MIN: ████████

   THIS SECURITY DEED ("Security Instrument") is given on  AUGUST 26, 2010 .
The grantor is  DANNY L. MONK AND PATRICIA L. MONK TENANTS BY ENTIRETY

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. MERS
is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns.  MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. (888) 679-MERS.  SEMPER HOME LOANS, INC., A RHODE ISLAND
CORPORATION                                                                                      ("Lender")
is organized and existing under the laws of  RHODE ISLAND                                                       ,
and has an address of 225 DUPONT DRIVE, PROVIDENCE, RHODE ISLAND 02907                        ,

Borrower owes Lender the principal sum of    ONE HUNDRED EIGHTY-THREE THOUSAND ONE
HUNDRED FORTY-THREE AND 00/100            Dollars (U.S. $ 183,143.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  SEPTEMBER 1, 2040 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower
does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns)
and the successors and assigns of MERS with power of sale, the following described property located in
                          LANIER   County, Georgia:

DocMagic *eForms* 800-649-1362
www.docmagic.com

EXHIBIT B

fha.xml

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which has the address of 14 CYPRESS TRAIL

[Street]

LAKELAND , Georgia 31635 ("Property Address"):

[City]                                    [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

DocMagic *eForms* 800-649-1362
www.docmagic.com

fhu.xml

EXHIBIT B

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  04/30/10                          Page 3 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

fha.xml

EXHIBIT B

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

DocMagic *eForms* 800-649-1362
www.docmagic.com

fha.xml

**EXHIBIT B**

**(d)  Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to  60 DAYS  from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.  Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  04/30/10                          Page 5 of 8                    DocMagic *eForms* 800-649-1362
                                                                            www.docmagic.com

fha.xml

**EXHIBIT B**

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds, of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are**

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA 04/30/10      Page 6 of 8      DocMagic *eForms* 800-649-1362
www.docmagic.com

**EXHIBIT B**

irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by applicable law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waivers of Homestead.** Borrower waives all rights of homestead exemption in the Property.

21. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] ACKNOWLEDGMENT WAIVER RIDER | |

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

FHA GEORGIA SECURITY DEED - MERS
GADOTZ.FHA  04/30/10                    Page 7 of 8                    DocMagic *eForms* 800-649-1362
www.docmagic.com

fha.xml

EXHIBIT B

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)       _____ (Seal)
DANNY L. MONK                    -Borrower     PATRICIA L. MONK                -Borrower

_____ (Seal)       _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)       _____ (Seal)
                                 -Borrower                                    -Borrower

_____ [Space Below This Line For Acknowledgment] _____

Signed, sealed and delivered on this ___26___ day of ___August 2010___ in the presence of:


_____               _____
Unofficial Witness                             Notary Public, State of Georgia Florida

_____               Printed Name: _DAVID L NEWMAN_
                                               My commission expires: _Oct 12, 2012_

DAVID L. NEWMAN
Notary Public - State of Florida
My Comm. Expires Oct 12, 2012
Commission # DD 826988
Bonded Through National Notary Assn.

FHA GEORGIA SECURITY DEED - MERS                Page 8 of 8            DocMagic eForms 800-649-1362
GADOTZ.FHA 04/30/10                                                   www.docmagic.com

fha.xml

EXHIBIT B

File No: ███████

## EXHIBIT A - LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND SITUATE, LYING AND BEING IN LAND LOT 494 OF THE 10TH DISTRICT OF LANIER COUNTY, GEORGIA DEED RECORDS, BEING MORE PARTICULARLY DESCRIBED AS LOT 35 OF BANKS LAKE POINTE SUBDIVISION AS SHOWN ON THAT CERTAIN MAP OR PLAT OF SURVEY ENTITLED "FINAL PLAT OF BANKS LAKE POINTE", DATED SEPTEMBER 29, 2005 AND RECORDED IN PLAT CABINET A, SLIDE NUMBER 133J* IN THE OFFICE OF THE CLERK OF THE SUPERIOR COURT OF LANIER COUNTY, GEORGIA DEED RECORDS. SAID MAP OR PLAT OF SURVEY IS INCORPORATED EHREIN BY REFERENCE THERETO FOR ALL PURPOSES IN AID OF DESCRIPTION.

* REVISED PLAT SHOULD BE A/131J

MAP #███████████

For title, see deed to Danny L Monk and Patricia L Monk recorded with said Deeds in Book/Volume 165, Page 122.

Property Address:
14 Cypress Trail
Lakeland, GA 31635

Stewart Title Guaranty Company

## EXHIBIT B

Loan Number: ▮▮▮▮▮▮

# ACKNOWLEDGMENT AND WAIVER
# OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 26th day of AUGUST, 2010 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to SEMPER HOME LOANS, INC., A RHODE ISLAND CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

14 CYPRESS TRAIL, LAKELAND, GEORGIA 31635

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
GAAWBR.MSC 07/06/10          Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

.msc.xml

EXHIBIT B

READ AND AGREED BY GRANTOR:

_____ [Space Below This Line For Acknowledgment] _____

Signed, sealed and delivered on this _7th_ day of _August 2010_ in the presence of:


_____
Unofficial Witness                _Kenneth E. Newman_

```
DAVID L. NEWMAN
Notary Public - State of Florida
My Comm. Expires Oct 12, 2012
Commission # DD 826988
Bonded Through National Notary Assn.
```

_____
Notary Public, State of ~~Georgia~~ _FLORIDA_

Printed Name: _DAVID L. NEWMAN_

My commission expires: _Oct 12, 2012_


_Danny L. Monk_              (Seal)
DANNY L. MONK              -Borrower

_Patricia L. Monk_              (Seal)
PATRICIA L. MONK              -Borrower


_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower


_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower


_____

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
GAAWBR.MSC  07/06/10                  Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

.msc.xml

EXHIBIT B

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this _26_ day of _August 2010_ .

_____
Notary Public

_____
Closing Attorney

DAVID L. NEWMAN
Notary Public - State of Florida
My Comm. Expires Oct 12, 2012
Commission # DD 826988
Bonded Through National Notary Assn.

_Gail A Bursaw_

GAIL A. BURSAW
Notary Public-State of Rhode Island
My Commission Expires
August 12, 2013

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

.msc.xml

EXHIBIT B

## Final Document Delivery Transmittal

Franklin American Mortgage Company

5221 North O'Connor Blvd.

Suite 900

MC: 1700-30

Irving, Texas, 75039

Attn: Correspondent Final Documents

Borrower's Name(s): *Monk, Danny*

Franklin American Mortgage Co. Loan Number ▮▮▮▮▮▮▮

All final delivery documents are to be sent in one package (using this form as a cover letter) within ninety (90) days of loan purchase, and forwarded to the address listed above.

✓ Original recorded Security Instrument (Mortgage, Deed of Trust)
Note: Riders to the original Security Instrument must be executed and made a part of such document.

___ Original recorded Assignment of Security Instrument, including Assignments to and from any intervening assignees.

___ Original, signed Mortgagee Policy of Title Insurance issued in connection with the loan and reflecting that the lien is insured as a valid, first and prior lien in an amount equal to the note, with applicable Endorsements.
Note: In the case of a loan with deferred interest, the amount of insurance must reflect the highest outstanding balance figure.

___ Loan Guaranty Certificate (LGC)

___ Mortgage Insurance Certificate (MIC)

✓ Other documents, as required

ADDITIONAL INFORMATION: *Endorsement to Title Policy Adding "Corrective Security Deed"*

Correspondent: *Semper Home Loans*

By: *Jayce Kavaller*          Date: *12/7/10*

EXHIBIT B



eFiled & eRecorded
DATE: 2/13/2019
TIME: 3:34 PM
DEED BOOK: 00314
PAGE: 00421
RECORDING FEE: 7.00
PARTICIPANT ID: 5224125492,7067927936
CLERK: Deborah A. Clark
Lanier County, GA

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

PIN#:
Doc ID:

## ASSIGNMENT OF SECURITY DEED

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SEMPER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **BANK OF AMERICA, N.A., WHOSE ADDRESS IS 451 7th STREET SW, #B-133, WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **DANNY L. MONK AND PATRICIA L. MONK** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SEMPER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS** and recorded in Deed **Book 221 and Page 466** in the office of the Clerk of the Superior Court of **LANIER** County, **Georgia.**

IN WITNESS WHEREOF, the undersigned has hereunto set its hand this 13th day of February in the year 2019.
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SEMPER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS**

By: _Stacey Giaquinto_
**STACEY GIAQUINTO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered on the date above and in the presence of:

_Marissa Lopez_
**MARISSA LOPEZ**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me this 13th day of February in the year 2019, by Stacey Giaquinto, VICE PRESIDENT authorized to sign on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SEMPER HOME LOANS, INC., ITS SUCCESSORS AND ASSIGNS. He/she is personally known to me or has produced _____ as identification.

_Michelle Brown_
**MICHELLE BROWN**
**COMM EXPIRES: 10/13/2020**

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 38514
Expires October 13,2020

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
BOA02 405977189 MERS  MIN 100909920100009454 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026 DOCR T131902-09:47:11 [C-1] EFRMGA1

EXHIBIT C

**qPublic.net**™   Lanier County, GA

## Summary



| | |
|---|---|
| Parcel Number | 014 0032A35 |
| Location Address | 14 CYPRESS TRL |
| Legal Description | LL 494 LD 10 BANKS LAKE POINTE |
| | (Note: Not to be used on legal documents) |
| Class | R3-Residential |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| Zoning | AG |
| Tax District | UNINCORPORATED - 01 (District 01) |
| Millage Rate | 32.676 |
| Acres | 1.28 |
| Neighborhood | BANKS LAKE POINTE (000003) |
| Homestead Exemption | No (S0) |
| Landlot/District | 494 / 10 |
| Water | N/A |
| Sewer | N/A |
| Electric | N/A |
| Gas | N/A |
| Topography | N/A |
| Drainage | N/A |
| Road Class | N/A |
| Parcel Road Access | N/A |

View Map

## Owner

MONK DANNY L & PATRICIA L
1425 RILA ST SE
PALM BAY, FL 32909

## Land

| Type | Description | Calculation Method | Square Footage | Frontage | Depth | Acres | Lots |
|---|---|---|---|---|---|---|---|
| Residential | BANKS LAKE POINTE | Lot | 0 | 0 | 0 | 1.28 | 1 |

## Residential Improvement Information

| | |
|---|---|
| Style | One Family |
| Heated Square Feet | 1930 |
| Interior Walls | Sheetrock |
| Exterior Walls | Aluminum/Vinyl Siding |
| Foundation | Piers |
| Attic Square Feet | 0 |
| Basement Square Feet | 0 |
| Year Built | 2006 |
| Roof Type | Asphalt Shingles |
| Flooring Type | Carpet/Tile |
| Heating Type | Central Heat/AC |
| Number Of Rooms | 0 |
| Number Of Bedrooms | 0 |
| Number Of Full Bathrooms | 2 |
| Number Of Half Bathrooms | 0 |
| Number Of Plumbing Extras | 3 |
| Value | $127,600 |
| Condition | Average |

## Accessory Information

| Description | Year Built | Dimensions/Units | Identical Units | Value |
|---|---|---|---|---|
| *SEPTIC ONLY | 2006 | 1x1 / 1 | 1 | $2,000 |

## Sales

| Sale Date | Deed Book / Page | Plat Book / Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 6/30/2006 | 165 122 | A 131J | $181,379 | Fair Market Value | AVM CONSTRUCTION INC | MONK DANNY L & PATRICIA L |
| 11/10/2005 | 156 478 | A 131J | $210,000 | MULTIPLE PARCELS INVOLVED IN SALE | PALM BREEZE DEVELOPMENT | AVM CONSTRUCTION INC |

## Valuation

| | 2018 | 2017 | 2016 | 2015 |
|---|---|---|---|---|
| Previous Value | $157,100 | $162,300 | $162,500 | $169,400 |
| Land Value | $27,500 | $27,500 | $27,500 | $27,500 |
| + Improvement Value | $127,600 | $127,600 | $133,100 | $133,100 |
| + Accessory Value | $2,000 | $2,000 | $1,700 | $1,900 |
| = Current Value | $157,100 | $157,100 | $162,300 | $162,500 |

## Photos



**Sketches**



**No data available for the following modules:** Rural Land, Conservation Use Rural Land, Commercial Improvement Information, Mobile Homes, Prebill Mobile Homes, Permits.

The Lanier County Assessor makes every effort to produce the most accurate information possible. No warranties, expressed or implied are provided
for the data herein, its use or interpretation. The assessment information is from the last certified tax roll. All other data is subject to change.

Developed by



Last Data Upload: 3/25/2019 2:34:54 AM

Version 2.2.6

EXHIBIT D